UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOEY FOLSE        *        CIVIL ACTION NO. 2:23-CV-05737

                         *

VERSUS            *        JUDGE JAY C. ZAINEY

                         *

CHEVRON U.S.A., INC.      *        MAGISTRATE MICHAEL B. NORTH

**MMR GROUP, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, MMR Group, Inc. ("MMR"), is entitled to summary judgment in its favor and against the plaintiff, Joey Folse ("Folse" or "Plaintiff"), on all of the claims which Plaintiff has asserted against MMR, as the Plaintiff has failed to produce and the record is devoid of any evidence supporting the following specific elements of his claims against MMR: (i) the breach of any duty of reasonable care owed by MMR to Plaintiff or any causal connection between such a breach and the Plaintiffs' alleged injuries; (ii) any failure on the part of MMR to provide a reasonably safe place to work; (iii) any duty on the part of MMR to supervise Plaintiff or his co-workers; (iv) any failure on the part of MMR to properly supervise its employees; (v) any failure on the part of MMR to take safety precautions or to provide minimum safety requirements; (vi) any obligation to or failure on the part of MMR to provide adequate equipment for the job in question; (vii) any obligation to or failure on the part of MMR to provide adequate personnel for the job in question; and (viii) any other act of negligence or unseaworthiness on the part of MMR.

1

Due to the lack of evidence in the record on these essential elements of the Plaintiff's claims, the burden shifts to Plaintiff to show that a genuine issue for trial on these claims.[1] For the reasons set forth herein, the Plaintiff cannot meet this burden and summary judgment must be granted in favor of MMR and against the Plaintiff dismissing these claims with prejudice.[2]

## I.    BACKGROUND

Plaintiff alleges he was injured while working for Danos, L.L.C. on the Main Deck of the Jack/St. Malo, an oil and gas production platform owned and/or operated by Chevron U.S.A., Inc. ("Chevron").[3] Plaintiff alleges that on June 29, 2023, he was walking to the mezzanine deck with an open bucket of paint when he "tripped on a wire left across a walkway from the paint mixing area, causing him to trip onto the deck, resulting in serious and debilitating injuries."[4] Plaintiff testified that this fall occurred on his return trip across this area, and that when he had previously traversed this area he had not seen the green wire on which he allegedly tripped.[5]  At the time of incident, MMR was engaged as a contractor on the Jack/St. Malo.[6] However, at the time of the incident, MMR was engaged in work in a different area of the Jack/St. Malo, below the Main Deck where the incident occurred.[7] On the date of the incident, MMR was working under permit JSM – 483630 between the Lower Deck CM and Tween Deck SW of the Jack/St. Malo from 7:22 am to 3:30 p.m.[8] The incident at issue in this lawsuit occurred at 9:47 a.m.[9] The wire in question was on

---

[1] *Thomas v. Barton Lodge II, Ltd*., 174 F.3d 636, 644 (5th Cir. 1999).
[2] *O'Connel Testamentary Tr. By Tr. Perret v. Allstate Ins. Co*., No. CIV.A. 07-3316, 2008 WL 2054419, at *2 (E.D. La. May 13, 2008) (Feldman, J.).
[3] R.Doc. 38, at ¶¶3-7.
[4] R.Doc. 38, at ¶6; **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 189:23-191:11.
[5] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 20:8-14.
[6] **Exhibit A**, Declaration of Anthony Biesi, at ¶2.
[7] **Exhibit A**, Declaration of Anthony Biesi, at ¶¶6 and 8; **Exhibit B**, MMR General Work Permits (MMR_000001-000050).
[8] **Exhibit B**, MMR General Work Permits (MMR_000001-000050); *see also* **Exhibit E**, Report of Michael Dadar, at p. 9.
[9] **Exhibit E**, Report of Michael Dadar, at p. 9.

a portable spool, not affixed to any structure or energized, and was not being used.[10] On the date of the incident, and in the two days preceding, no MMR employee handled, moved, or transported any wire or wire spool on the Main Deck of the Jack/St. Malo.[11]

In his Second Supplemental and Amended Complaint, Plaintiff does not specifically allege that MMR caused the wire, which allegedly caused his fall, to be in what he alleges to be a "walkway." In his Second Supplemental and Amended Complaint, Plaintiff asserts the following claims against MMR: (i) breach of a legally imposed duty of reasonable care owed by MMR to Plaintiff; (ii) failure to provide a reasonably safe place to work; (iv) failure to take any means or precautions for the safety of MMR's employees and other third parties working on the Jack/St. Malo, including Plaintiff; (v) failure to provide minimum safety requirements; (vi) failure to provide adequate equipment for the job in question; (vii) failure to provide adequate personnel for the job in question; and (viii) other acts of negligence and unseaworthiness.

## II.     LAW AND ARGUMENT

### a.  Summary Judgment Standard

Federal Rule 56 provides that a party may move for summary judgment, in whole or in part, on any claim or defense and that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue is material if its resolution could affect the outcome of litigation.[12] When assessing whether a material fact is actually in dispute, a court considers the evidence in the

---

[10] **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse; **Exhibit E**, Report of Michael Dardar, at p. 7.
[11] **Exhibit A**, Declaration of Anthony Biesi, at ¶9.
[12] *DIRECTV Inc., Robson*, 420 F.3d 532, 536 (5th Cir. 2005).

record, but refrains from making credibility determinations about or weighing that evidence.[13] "All reasonable inferences are drawn in favor of the nonmoving party."[14] "There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law."[15]

Where, as here, the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden by: (i) submitting affirmative evidence that negates an essential element of the nonmovant's claim; or (ii) demonstrating that there is no evidence in the record to establish an essential element of the nonmovant's claim.[16] Under the second option, the burden shifts to the nonmovant to call to the trial court's attention supporting evidence already in the record that was overlooked or ignored by the moving party.[17] To meet his burden, the nonmovant "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[18] The nonmovant's burden is not met with metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by a mere scintilla of evidence.[19] Nor can a motion for summary judgment be defeated by self-serving allegations.[20] If the nonmovant is successful in identifying some record evidence that was overlooked or ignored by the moving party, the burden then shifts back to the moving party to demonstrate the inadequacy of this evidence.[21]

---

[13] *Delozier v. S2 Energy Operating, LLC*, 500 F. Supp. 3d 514, 517 (E.D. La. 2020) (Morgan, J.).
[14] *Id*.
[15] *Id*.
[16] *Id*. at 518.
[17] *Id*.
[18] *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994).
[19] *Id*.
[20] *Burrle v. Plaquemines Par. Gov't*, No. CIV.A. 12-739, 2013 WL 2286113, at *6 (E.D. La. May 23, 2013) (Knowles, M.J.), *aff'd* (Jan. 22, 2014).
[21] *Id*.

"Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[22] "Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant."[23]

### b. Lack of Evidence as to Essential Elements

#### i. No Evidence of Breach or Causation

Plaintiff asserts a claim against MMR for the "[b]reach of a legally imposed duty of reasonable care owed by [MMR] to Plaintiff."[24]

The elements of a maritime negligence claim are essentially the same as land-based negligence claims.[25] For a maritime negligence claim, a plaintiff must demonstrate: (i) that there was a duty owed by the defendant to the plaintiff; (ii) an injury sustained by the plaintiff; and (iii) a causal connection between the defendant's conduct and the plaintiff's injury.[26] "Under maritime law, a plaintiff is owed a duty of ordinary care under the circumstances."[27] "The determination of the existence and scope of a duty involves a number of factors, including most notably the foreseeability of the harm suffered by the complaining party."[28] A duty is owed "only with respect to the interest that is foreseeably jeopardized by the negligence conduct."[29]

---

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 333 n.3, 106 S.Ct. 2548, 2558, 91 L.Ed.2d 265 (1986).
[23] *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).
[24] R.Doc. 38, Second Supplemental and Amended Complaint, at ¶11.
[25] *Withhart v. Otto Candies, LLC*, 431 F.3d 840, 842 (5th Cir. 2005).
[26] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 211 (5th Cir. 2010).
[27] *Id*.
[28] *Id*. (quoting *Consol. Aluminum Corp. v. C.F. Bean Corp*., 833 F.2d 65, 67 (5th Cir. 1987)).
[29] *Id*.

Here, whether raised under maritime law or Louisiana law, if same is not displaced, MMR is entitled to summary judgment in its favor dismissing the Plaintiff's negligence claim as the record is devoid of any evidence supporting two essential elements of this claim (or any of the Plaintiff's claims premised on negligence), namely breach and causation. Here, assuming *arguendo* that MMR owed some duty of reasonable care to Plaintiff, which is not admitted, there is no evidence in the record to establish the breach of any such duty or causation between any such breach and the Plaintiff's alleged injuries.

## 1. Breach

There is nothing in the record which evidences any breach of any duty owed by MMR to Plaintiff, apart from the bare allegations of the Plaintiff's Second Supplemental and Amended Complaint, which are insufficient to defeat summary judgment on this claim.[30]

In his Second Supplemental and Amended Complaint, Plaintiff alleges that "he tripped on a wire that was left across a walkway from the paint mixing area, causing him to trip and fall onto the deck[.]"[31] Nowhere does the Plaintiff allege that it was MMR who allegedly left the wire in the "walkway" and nothing in the record evidences MMR having left the wire in the "walkway." Further, the record reflects that the wire was not actually in a designated or reasonable walkway, that it did not present a hazard, and that its unsafe and imprudent for the Plaintiff to have traversed

---

[30] *Navarro v. City of San Juan, Tex*., 624 F. App'x 174, 178 (5th Cir. 2015) (in summary judgment practice, the nonmovant's burden is not satisfied by metaphysical doubt as to material facts, by conclusory allegation, by unsubstantiated assertions, or only by a scintilla of evidence); *Contemp. Mission, Inc. v. U.S. Postal Serv*., 648 F.2d 97, 107 (2d Cir. 1981) ("[I]t is clear that a plaintiff cannot defeat a motion for summary judgment by merely restating the conclusory allegations contained in his complaint, and amplifying them only with speculation about what discovery might uncover.").

[31] R.Doc. 38, Second Supplemental and Amended Complaint, at ¶4.

this area, while carrying an open can of paint that he was actively trying not to spill, when there were 5 to 10 feet of completely unobstructed walkway available to the Plaintiff.[32]

In his deposition, the Plaintiff was asked to make certain indications on a photograph depicting the area of the Jack/St. Malo where the incident at issue occurred. In this picture, reproduced below, the black arrow represents his initial pathway to pick up the can of paint, the blue arrow represents the direction he was traveling back prior to allegedly falling, the "X" represents the approximate location where he fell, and the blue circle represents where he alleges he saw the wire after he fell:[33]



---

[32] **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 11:2-7 and 12:4-13:9; **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 20:7-10 and 21:22-26:15; **Exhibit E**, Report of Michael Dadar, at pp. 13-14.
[33] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 8:3-20:7; **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse.

The Health, Environmental, and Safety (HES) Coordinator for Chevron on the Jack/St. Malo on the day of the incident that took the above photograph which depicts the location of the wire immediately prior to the accident according to people working on the Jack/St. Malo that day.[34]

The Plaintiff testified that the first time he traversed this area, on his way to get the paint can, he did not see the wire in what he describes as a "walkway."[35] Plaintiff testified that he did not see the wire prior to falling, and that he only saw "something green" after having fallen in the spot indicated by the circle on the above photograph, which he believed to be the wire.[36] Plaintiff testified that he had no knowledge regarding what work MMR was performing at the time he fell or even if MMR had workers in the area.[37] There is no evidence in the record to suggest that the wire at issue was moved, by MMR or any other party, during the interval between when Plaintiff first traversed the area and then made his return trip across this area. The wire in question was on a portable spool sitting on a welded raised pad, not affixed to any structure or energized, and was not being used at the time.[38] Further, Beau Harrington, Chevron's Operations Tech 3 who was working on the Jack/St. Malo on the day of the incident has testified that the wire being positioned as it is in the above photo does not represent a hazard as it is not obstructing a walkway.[39] On the day of the incident, June 29, 2023, and in the two days preceding, no MMR employee handled, moved or transported any wire or wire spool on the Main Deck of the Jack St. Milo.[40] Specifically,

---

[34] **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jaques, 15:6-25.

[35] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 20:8-14.

[36] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 19:5-20:7, 21:13-24.

[37] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 25:1-22.

[38] **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse; **Exhibit E**, Report of Michael Dardar, at p. 7.

[39] **Exhibit K**, Excerpts from the August 27, 2024 Deposition of Beau Harrington, at 13:4-10; **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 7:12-8:17.

[40] **Exhibit A**, Declaration of Anthony Biesi, at ¶9.

no MMR employee handled, moved or transported the wire or spools depicted in the above photograph on June 27, 2023, June 28, 2023 or June 29, 2023.[41]

In fact, the Chevron General Work Permits, produced in discovery, show that MMR was not performing work on the deck where the incident occurred on that day or in the days prior to the incident.[42] MMR was instead performing work on decks below the Main Deck.[43] On June 29, 2023, MMR was working under permit JSM – 483630 between the Lower Deck CM and Tween Deck SW of the Jack/St. Malo from 7:22 am to 3:30 p.m.[44] The incident at issue occurred at 9:47 a.m. on the Main Deck of the Jack/St. Malo. [45] There is nothing in the record which indicates that MMR was responsible for placing the green wire in what the Plaintiff describes as a "walkway" on the day of the incident. Instead, the record reflects that the spool and wire were situated on a raised circular welded pad, outside of any designated walkway or primary travel path.[46]

Further, there is no evidence of any safety violation on the part of MMR. Plaintiff has not produced the report of any expert to testify regarding any alleged safety violation and the deadline to do so has now passed.[47] In contrast, MMR's expert, who will testify at trial, has found that no safety violation was committed by MMR here.[48] MMR's expert determined that "[t]here is no legitimate operational, supervisory, or regulatory justification to attribute any fault or responsibility to [MMR] regarding this incident[,]" and that "[t]here is no evidence suggesting that

---

[41] **Exhibit A**, Declaration of Anthony Biesi, at ¶9.
[42] **Exhibit A**, Declaration of Anthony Biesi, at ¶7; **Exhibit B**, MMR General Work Permits (MMR_000001-000050); **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 9:8-11:20.
[43] *Id*.
[44] **Exhibit B**, MMR General Work Permits (MMR_000001-000050); *see also* **Exhibit E**, Report of Michael Dadar, at p. 9.
[45] **Exhibit E**, Report of Michael Dadar, at p. 9; **Exhibit J**, Danos Incident Investigation Report (Chevron_Folse_0000034-0000037).
[46] **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse; **Exhibit E**, Report of Michael Dardar, at p. 9.
[47] R.Doc. 49, Case Management Order.
[48] **Exhibit E**, Report of Michael Dardar, at pp. 14-15.

MMR violated Chevron protocols, relevant regulations, best industry practices, or any other appliable industry standards in connection with this incident."[49] The conclusion that there was no safety violation here is supported by the testimony of both Beau Harrington and Josh Jaques, the Operations Tech 3 and the Health, Environmental, and Safety (HES) Coordinator on the Jack/St. Malo, respectively.[50] Beau Harrington has testified that: (i) the wire being positioned as it is photograph above does not present a hazard as it is not obstructing a walkway; and (ii) that there was ten feet or more of unobstructed space adjacent to where the wire was located that the Plaintiff could have used as a walkway.[51] Josh Jaques testified that: (i) there was at least 5 to 6 feet of open walkway available to the Plaintiff; and (ii) that the area in which the wire is located is not a walkway.[52]

What MMR's expert determined was that the Plaintiff was working in an unsafe manner as his attention, and likely his line of sight, were diverted while carrying an open gallon of paint that he was actively trying not to spill.[53] The path Plaintiff took was unsafe and imprudent because it required him to traverse or walk in close proximity to the circular raised welded pad which is depicted in the picture above, when Plaintiff could have utilized 5 to 10 feet of open deck.[54]

In sum, the record is devoid of any evidence of a safety violation or other breach of any duty on the part of MMR. Plaintiff can point to no ignored or overlooked evidence on this issue, and has not presented an expert opinion to challenge the opinion of MMR's expert. Accordingly,

---

[49] **Exhibit E**, Report of Michael Dardar, at p. 15.
[50] **Exhibit K**, Excerpts from the August 27, 2024 Deposition of Beau Harrington, at 13:4-10; **Exhibit F**, Excerpts from August 27, 2024 Deposition of Josh Jaques, at 17:1-7.
[51] **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 7:12-8:17, 11:2-7, and 12:4-13:9.
[52] **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 20:7-10 and 21:22-26:15.
[53] **Exhibit E**, Report of Michael Dardar, at 13-14.
[54] **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 11:2-7 and 12:4-13:9; **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 20:7-10 and 21:22-26:15.

as there is nothing in the record evidencing a breach on the part of MMR, it is entitled to summary judgment on Plaintiff's negligence claim(s).

## 2. Causation

There is testimony in the record that the above photograph depicts the spool and wire as same existed at the time the incident occurred.[55] To the extent that the existence of the spool and wire in the depicted state could constitute a breach on the part of MMR, which is denied, there is no evidence in the record that the spool and wire existing in this state caused the Plaintiff's alleged injuries. In fact, the records weighs against the spool and wire being the cause of Plaintiff's injuries.

Again, in his deposition, the Plaintiff was asked to make certain indications on the above photograph. In this picture, the black arrow represents his initial pathway to pick up the can of paint, the blue arrow represents the direction he was traveling back prior to allegedly falling, the "X" represents the approximate location where he fell, and the blue circle represents where he alleges he saw the wire after he fell.[56] Again, a witness has testified that this picture reflects the position of the wire and spool at the time the incident occurred.[57] Further, the black tape securing the wire is visibly weathered and worn, indicating it had been in this condition prior to the incident and contradicting any assertion that the wire was taped or moved after the Plaintiff's fall.[58]

As can be seen in the photograph, the "X" marking where the Plaintiff fell is not in proximity to where it has been testified that the green wire was at the time of the incident. If the

---

[55] **Exhibit F**, Excerpts from the August 27, 2024 Deposition of Josh Jaques, at 22:1-23:23.
[56] **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 8:3-20:7; **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse.
[57] **Exhibit F**, Excerpts from the August 27, 2024 Deposition of Josh Jaques, at 22:1-23:23.
[58] **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8, 2025 Deposition of Joey Folse; **Exhibit E**, Report of Michael Dardar, at p. 8.

green wire was not positioned in proximity to where the Plaintiff fell, it cannot be the cause of his fall and alleged injuries. Plaintiff could not have tripped on something not in his path.

Here, Plaintiff also circled the picture to depict where he allegedly saw the wire after falling. However, this self-serving testimony from the Plaintiff may be disregarded by the Court.[59] Further, Plaintiff's testimony in this regard is vague and equivocal. Although he circled this area on the picture above, he also testified that after tripping he looked back and saw "something green," that he did not see the green wire, that he thought he had tripped on a rope, and that he cannot remember if it was stretched out or coiled up at the time of his fall.[60]

There is nothing in the record beyond Plaintiff's equivocal and self-serving testimony which evidences the wire being the cause of Plaintiff's fall and alleged injuries. Further, what the record does evidence is that the wire was some distance away from where the Plaintiff tripped and fell, atop a circular raised welded pad. Further, MMR's expert opined that the Plaintiff's attention and likely his line of sight was diverted due to his active efforts not to spill paint from the open can that he was carrying.[61] Being so distracted, Plaintiff could have tripped over nothing or anything, including without limitation the edge of the raised welded pad.

Accordingly, MMR is entitled to summary judgment on the Plaintiff's negligence claim(s) for the additional reason that there is a lack of evidence in the record (beyond Plaintiff's self-serving testimony which may be disregarded) that MMR's alleged breach was a legal cause of the Plaintiff's alleged injuries.

---

[59] *Parekh v. Argonautica Shipping Invs. B.V.*, 295 F. Supp. 3d 707, 716 (E.D. La. 2018) (Morgan, J.) ("The Fifth Circuit rejects the use of self-serving affidavits and testimony to defeat summary judgment").
[60] **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 192:1-9, 198:6-15.
[61] **Exhibit E**, Report of Michael Dadar, at pp. 13-15.

### ii.   No Evidence of Failure to Provide a Reasonably Safe Place to Work

#### 1.   Maritime Law

Under maritime law, a Jones Act seaman has a cause of action against his **employer**, in negligence, for the failure to provide a reasonably safe place to work.[62] The employer's duty under maritime law to provide a reasonably safe place to work is absolute and nondelegable, and applies whether the employer is the owner of the vessel or the owner *pro hac vice*.[63] While this duty is broad, it is not a form of strict liability.[64] The seaman has a corresponding duty to act with ordinary prudence under the circumstances.[65]

Here, Plaintiff was not the direct employee of MMR.[66] Further, there is nothing in the record to suggest that Plaintiff was a borrowed servant of MMR, nor was Plaintiff a borrowed servant of MMR in actual fact.[67] In fact, Plaintiff alleges that he was an employee of Danos, L.L.C.[68]

Under maritime law, courts consider the following factors to determine when a servant has been borrowed by another employer: (1) Who has control over the employee and the work he is performing?; (2) Whose work is being performed?; (3) Was there an agreement, understanding, or meeting of the minds between the original and borrowing employer?; (4) Did the employee acquiesce in his new work situation?; (5) Did the original employer terminate his relationship with

---

[62] *Daigle v. L & L Marine Trans., Co*., 322 F. Supp. 2d 717, 725 (E.D. La. 2004) (Fallon, J.). It bears noting that the jurisprudence sometimes conflates claims for unseaworthiness and claims for breach of an employer's duty to provide a reasonably safe place to work. However, these are best understood as separate, although conceptually related, claims. *Bess v. Agromar Line*, 518 F.2d 738, 741 n.4 (4th Cir. 1975); *The State of Maryland*, 85 F.2d 944, 947-48 (4th Cir. 1936). The Plaintiff's unseaworthiness is addressed in Section II.b.viii of this Memorandum.
[63] *Id*.
[64] *Id*.
[65] *Thibodeaux v. Ensco Offshore Co.*, 300 F. Supp. 3d 792, 801 (W.D. La. 2017).
[66] **Exhibit A**, Declaration of Anthony Biesi, at ¶11.
[67] **Exhibit A**, Declaration of Anthony Biesi, at ¶11.
[68] R.Doc. 38, at ¶¶3 and 8.

the employee?; (6) Who furnished the tools and place for performance?' (7) Was the new employment over a considerable length of time?; (8) Who has the right to discharge the employee?; and (9) Who has the obligation to pay the employee?[69] There is absolutely no evidence in the record to support any of these factors weighing in favor of a borrowed servant relationship between MMR and the Plaintiff. In fact, the record reflects that Plaintiff was the employee of Danos, L.L.C. and that Danos, L.L.C. was supervising his work on the day of the incident at issue in this lawsuit.[70]

Further, MMR is not the owner or operator of the Jack/St. Malo.[71] Nor was MMR the owner *pro hac vice* of the Jack/St. Malo when the incident at issue in this lawsuit occurred.[72] An owner *pro hac vice* is one who stands in the place of the owner of a vessel for the voyage or service contemplated and bears the owners' responsibilities, even though he does not take legal ownership of the vessel.[73] The maritime jurisprudence has recognized only two types of owners *pro hac vice*: (i) demise charterers; and (ii) fishing vessels operated pursuant to fishing lays.[74] Without going into an unnecessary description of demise charters and fishing lays here, MMR was not and has never been a demise charterer of or the party to a fishing lay pertaining to the Jack/St. Malo.[75] Nor is there anything at all in the record suggesting otherwise.

Further, under maritime law, Plaintiff was obligated to act with ordinary prudence in relation to his work, based upon his own experience, training and education.[76] Plaintiff has

---

[69] *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1249 (5th Cir. 1984).
[70] R.Doc. 38, Second Supplemental and Amended Complaint, at ¶3; **Exhibit H**, Work Permit and Related Documents Attached as Exhibit 1 to the July 30, 2024 Deposition of Joey Folse, at pp. 1-2, 9, 13; **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 73:11-20, 150:9-14, 173:11-17, 179:14-25; **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 19:16-21; 25:24-26:10.
[71] **Exhibit A**, Declaration of Anthony Biesi, at ¶2.
[72] **Exhibit A**, Declaration of Anthony Biesi, at ¶14.
[73] *McAleer v. Smith*, 57 F.3d 109, 112 (1st Cir. 1995).
[74] *Id*.
[75] **Exhibit A**, Declaration of Anthony Biesi, at ¶14.
[76] *Gautreaux v. Scurlock Marine, Inc*., 107 F.3d 331, 339 (5th Cir. 1997).

admitted in his deposition testimony that he received training, including training regarding walkway hazards.[77] Despite this training, assuming *arguendo* that the Plaintiff's allegations are true, Plaintiff failed to exercise ordinary prudence in keeping a lookout to determine that his walkway was free of hazards.[78] Where, as here, the alleged injuries are solely the result of the seaman's own failure to "look where he was going" on a deck presenting conditions that were no different from what a seaman would ordinarily and reasonably expect to find, the seaman is not entitled to recovery.[79] Further, as previously set forth herein, the Plaintiff did not act with ordinary prudence because he chose to walk in an area which was not a proper walkway, in proximity to potential obstructions, carrying an open buck of paint that he was trying actively not to spill, when there were 5 to 10 feet of available unobstructed walkway available to him.[80]

Here, the record is devoid of any evidence supporting the status of MMR as the Plaintiff's direct or borrowing employer and is devoid of any evidence supporting MMR status as the owner or owner *pro hac vice* of the Jack/St. Malo. Further, the record evidences the Plaintiff's breach of his own duty to act as a prudent seaman. The Plaintiff cannot point to any overlooked or ignored evidence on these issues because, in actual fact, MMR never had the status of employer or owner in any form, and no evidence exists which could render Plaintiff's actions on the day of the incident "prudent." Accordingly, there is no genuine issue of material fact as to these essential elements of

---

[77] **Exhibit G**, Excepts from the July 30, 2024 Deposition of Joey Folse, at 130:18-132:25, 260:2-261:14.

[78] **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 186:22-188:23.

[79] *See Lombas v. Moran Towing & Transp. Co.*, 899 F. Supp. 1089, 1095-96 (S.D.N.Y. 1995), *aff'd*, 101 F.3d 685 (2d Cir. 1996) (denying recovery to seaman where his alleged injuries resulted from his own negligent failure to look where he was going on a deck that presented conditions that were no different from what a seaman would ordinarily and reasonably expect to find).

[80] **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 11:2-7 and 12:4-13:9; **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 20:7-10 and 21:22-26:15; **Exhibit E**, Report of Michael Dardar, at pp. 7 and 13.

the Plaintiff's claim under maritime law for failure to provide a reasonably safe place to work and, as such, MMR is entitled to judgment in its favor dismissing this claim.

## 2. Louisiana State Law

To the extent that Louisiana state law has not been displaced by the exercise of admiralty jurisdiction and Plaintiff has properly raised a state law claim for failure to provide a reasonably safe place to work, MMR is entitled to summary judgment dismissing this claim with prejudice as well. MMR is entitled to summary judgment in its favor on this claim because: (i) it is not the Plaintiff's employer; (ii) there is no evidence in the record pointing to any delegation of this duty by Plaintiff's employer to MMR; and (iii) MMR did not, in actual fact, control the premises where Plaintiff performed his work and there is no evidence in the record indicating any control over the premises by MMR.

Louisiana law provides that an **employer** has a duty to provide its employees with a reasonably safe place to work.[81] Under Louisiana law, this duty may be delegated to third parties engaged by the direct employer to supervise and direct the work of their employees.[82] The duty has been extended to third parties with control over the premises where the work is performed.[83]

Here, MMR owed no duty to Plaintiff to provide him with a reasonably safe place to work as: (i) MMR was not Plaintiff's direct employer; (ii) Plaintiff's direct employer did not delegate this duty to MMR; and (iii) MMR had no control over the premises where Plaintiff was working.

---

[81] *Lytell v. Hushfield*, 408 So.2d 1344, 1347-48 (La. 1982); La. Rev. Stat. §23:13.
[82] *White v. C.F. Indus., Inc.*, 411 So.2d 511, 514-15 (La. App. 1 Cir. 1982), *writ denied sub nom. White v. C.F. Indus., Inc.*, 413 So.2 509 (La. 1982).
[83] *Bourgeois v. Puerto Rican Marine Mgmt., Inc.*, 589 So.2d 1226, 1235 (La. App. 4 Cir. 1191), *writ denied*, 592 So.2d 1299 (La. 1992), and *writ denied*, 592 So.2d 1300 (La. 1992).

At the time of the incident at issue in this lawsuit, Plaintiff was an employee of Danos, L.L.C.[84] Plaintiff has never been employed by MMR.[85] Further, Danos, L.L.C. never engaged MMR to direct or supervise the work of Plaintiff, and Danos, L.L.C. never otherwise delegated the duty to provide Plaintiff a safe place to work to MMR.[86] The record is devoid of any evidence suggesting otherwise. In fact, the evidence in the record indicates that Plaintiff was being supervised by Atlantis "Slim" Simien of Danos, L.L.C. on the date and at the time of the accident.[87]

Further, MMR did not have control over the premises of the Jack/St. Malo or the area of the Jack/St. Malo where Plaintiff was performing his work when the incident at issue in this lawsuit occurred.[88] The record is devoid of any evidence suggesting otherwise. In fact, the record indicates that Chevron is the owner/operator of the Jack/St. Malo and maintains control over the premises thereof through a work permitting process.[89]

Accordingly, there is no evidence in the record to support a claim against MMR under Louisiana law for the failure to provide a safe place to work. Plaintiff cannot point to any overlooked or ignored evidence because it does not exist. No such evidence exists because, in actual fact, MMR was not Plaintiff's employer, did not control or direct his work, and had no control over the premises at the time the incident occurred. As such, there is no genuine issue of material fact in relation to an essential element of this claim and MMR is entitled to summary judgment in its favor and against Plaintiff dismissing this claim with prejudice.

---

[84] R.Doc. 38, Second Supplemental and Amended Complaint, at ¶3.
[85] **Exhibit A**, Declaration of Anthony Biesi, at ¶11.
[86] **Exhibit A**, Declaration of Anthony Biesi, at ¶¶12 and 13.
[87] **Exhibit H**, Work Permit and Related Documents attached as Exhibit 1 to the July 30, 2024 Deposition of Joey Folse, at pp. 1-2, 9, 13; **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 73:11-20, 150:9-14, 173:11-17, 179:14-25; **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 19:16-21; 25:24-26:10.
[88] **Exhibit A**, Declaration of Anthony Biesis, ¶¶7, 8 and 10.
[89] **Exhibit H**, Work Permit and Related Documents attached as Exhibit 1 to the July 30, 2024 Deposition of Joey Folse.

### 3.   No Evidence of Any Safety Violation

This claim is also legally untenable as there is no evidence in the record of any safety violation on the part of MMR. As previously set forth herein, Plaintiff has not produced the report of any expert to testify regarding any alleged safety violation and the deadline to do so has now passed.[90] In contrast, MMR's expert, who will testify at trial, has found that no safety violation was committed by MMR here.[91] What MMR's expert determined was that the Plaintiff, if anyone, was working in an unsafe manner because he was walking while distracted by carrying an open paint can that he was actively trying not to spill.[92] The path Plaintiff took was unsafe and imprudent because it required him to traverse or walk in close proximity to the circular raised welded pad. This pad is raised a few inches above the deck height, creating a readily apparent tripping hazard to anyone that is looking where they are going.[93] Plaintiff chose to take this unsafe and imprudent path, even though he had, at the time, 5 to 10 feet of open deck available to him in which to safely walk.[94] Absent any evidence of a safety violation on the part of MMR, Plaintiff cannot succeed on his claim alleging a failure to provide a safe workplace.

### iii.   No Evidence of MMR Obligation to Supervise Plaintiff or his Co-Workers

MMR is entitled to summary judgment in its favor on Plaintiff's claim for failure to supervise Plaintiff or his co-workers because there is no evidence in the record indicating that MMR had any duty to supervise Plaintiff or his co-workers and, in actual fact, MMR had no such obligation/duty. It is simply indisputable that MMR was: (i) not the employer of Plaintiff or his

---

[90] R.Doc. 49, Case Management Order.
[91] **Exhibit E**, Report of Michael Dardar, at pp. 14-15.
[92] **Exhibit E**, Report of Michael Dardar, at pp. 13-14.
[93] **Exhibit D**, Photograph Attached as Exhibit 3.a to the May 8. 2025 Deposition of Joey Folse.
[94] **Exhibit L**, Excerpts from the July 2, 2025 Deposition of Beau Harrington, at 11:2-7 and 12:4-13:9; **Exhibit M**, Excerpts from the July 1, 2025 Deposition of Josh Jacques, at 20:7-10 and 21:22-26:15

co-workers;[95] and (ii) was not supervising or controlling the work performed by Plaintiff and his co-workers on the day the incident occurred.[96]

Under both federal maritime law and Louisiana state law, a failure to supervise claim rings in negligence.[97] Under maritime law, negligent supervision occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further actions such as investigation, discharging, or reassignment.[98] Under Louisiana law, negligence of an employer for failing to supervise is based upon the independent or direct negligence of the employer in breaching its duty to exercise reasonable care in supervising its employees, when those employees are, in some respect, engaged in furthering the employer's business at the time of their tortious conduct.[99] Key to both of these theories of liability is the employer-employee relationship.

On the day the incident at issue occurred, Plaintiff was working on behalf of Danos, L.L.C. under a Chevron work permit issued to Danos, L.L.C.[100] The record indicates that Plaintiff was being supervised by Atlantis "Slim" Simien of Danos, L.L.C.[101] The record is devoid of anything evidencing otherwise. The record is also devoid of any evidence suggesting that Plaintiff was furthering the interest of MMR in the performance of his work on the day of the incident.

---

[95] **Exhibit A**, Declaration of Anthony Biesi, at ¶11 and 12.

[96] **Exhibit A**, Declaration of Anthony Biesi, at ¶12; **Exhibit I**, Danos Work Permit (Chevron_Folse_0000017-0000032).

[97] *See Spotts v. Carnival Corp.*, 711 F. Supp. 3d 1360, 1367 (S.D. Fla. 2024) (negligent training and negligent supervision both recognized duties under federal maritime law); *Pelitrire v. Rinker*, 18-501 (La. App. 5 Cir. 4/17/19), 270 So.3d 817, 834, *writ denied*, 19-00793 (La. 9/17/19), 279 So.3d 378 (addressing claim for negligent hiring, training and supervision of employee).

[98] *Spotts*, 711 F. Supp. 3d at 1367.

[99] *Pelitire*, 270 So.3d at 834.

[100] **Exhibit I**, Danos Work Permit (Chevron_Folse_0000017-0000032).

[101] **Exhibit H**, Work Permit and Related Documents attached as Exhibit 1 to the July 30, 2024 Deposition of Joey Folse, at pp. 1-2, 9, 13; **Exhibit G**, Excerpts from the July 30, 2024 Deposition of Joey Folse, at 73:11-20, 150:9-14, 173:11-17, 179:14-25; **Exhibit C**, Excerpts from the May 8, 2025 Deposition of Joey Folse, at 19:16-21, 25:24-26:10.

Furthermore, at least under Louisiana law, an employer cannot be held liable for negligent supervision if the employee is not at fault.[102] Here, Plaintiff has made no allegation that either he or his co-workers were negligent and that this negligence on their part caused his alleged injuries.

As there is no evidence in the record to support a claim against MMR for the negligent supervision of the Plaintiff and his co-workers, and because there is no overlooked or ignored evidence that Plaintiff can point to which will change the indisputable fact that he was neither he nor his co-workers were the employees of MMR, MMR is entitled to summary judgment in its favor on this claim.

### iv.   No Evidence of MMR Failure to Supervise its Employees

The record is also completely devoid of both: (i) any evidence suggesting that MMR breached its duty to exercise reasonable care in supervising its employees; and (ii) any evidence that any breach by MMR caused the Plaintiff's alleged injuries. What the record reflects is that MMR's employees were working on decks below where the incident occurred.[103] As previously set forth herein, there is simply nothing in the record to suggest that an employee of MMR committed any safety violation, or did anything, which resulted in the Plaintiff's alleged injuries.

As there is no evidence in the record to support a claim against MMR for the negligent supervision its employees, and because there is no overlooked or ignored evidence that Plaintiff can point to which would give rise to such a claim, MMR is entitled to summary judgment in its favor on this claim as well.

---

[102] *Jameson v. Montgomery*, 22-01784 (La. 5/5/23), 366 So.3d 1210, 1227, *reh'g denied*, 22-01784 (La. 6/27/23), 364 So.3d 1153.
[103] **Exhibit A**, Declaration of Anthony Biesi, at ¶¶7, 8 and 9; **Exhibit B**, MMR General Work Permits (MMR_000001-000050).

### v. No Evidence of Failure to take Safety Precautions/Provide Minimum Safety Requirements

Maritime law recognizes a claim in negligence for failure to take proper safety precautions.[104] However, this duty is owed to the employee by his employer.[105] Here, again, the record is devoid of anything suggesting that Plaintiff was the direct employee of MMR or its borrowed servant, and, in actual fact, he was neither of these things.[106] Although the law in Louisiana regarding negligence claims based on the failure to take safety precautions is less developed (outside of the common carrier context), as with any negligence claim under Louisiana law it requires as necessary elements duty, breach and causation.

Here, as previously stated, the record is devoid of anything evidencing a duty owed by MMR, its breach, or causation between any breach and the alleged injuries. Further, the "[f]ailure to use extraordinary care and to take every precaution against injury is not actionable negligence" under Louisiana law.[107] Here, there is nothing in the record which suggests that MMR failed to exercise ordinary care and take proper safety precautions in relation to any of its work on the Jack/St. Malo. What the record evidences is that: (i) MMR was working in a different area of the Jack/St. Malo when this incident occurred;[108] and (ii) that MMR committed no safety violation.[109] Plaintiff can point to no evidence which would contradict the fact that MMR was working elsewhere when the accident occurred, and it has not engaged an expert to opine on whether or not a safety violation occurred. As such, there is no genuine issue of material fact that MMR did not

---

[104] *Perkins v. Am. Elec. Power Fuel Supply, Inc*., 246 F.3d 593, 602 (6th Cir. 2001); *Blaauw v. Superior Offshore Int'l, LLC*, No. CIV. 06-1380, 2008 WL 4224808, at *10 (W.D. La. Sept. 10, 2008).
[105] *See Semien v. Parker Drilling Offshore USA LLC*, 179 F. Supp. 3d 687, 694 (W.D. La. 2016);
[106] **Exhibit A**, Declaration of Anthony Biesi, at ¶11 and 12.
[107] *Miller v. Emps. Mut. Liab. Ins. Co. of Wisconsin*, 349 So.2d 1353, 1363 (La. App. 2 Cir. 1977), *writ denied*, 353 So.2d 235 (La. 1977), and *writ denied*, 352 So.2d 235 (La. 1977).
[108] **Exhibit A**, Declaration of Anthony Biesi, at ¶7; **Exhibit B**, MMR General Work Permits (MMR_000001-000050).
[109] **Exhibit E**, Report of Michael Dardar, at pp. 14-15.

fail to take safety precautions and/or provide minimum safety requirements and MMR is, therefore, entitled to summary judgment in its favor dismissing this claim with prejudice.

### vi.   No Evidence of Obligation or Failure to Provide Proper Equipment

Maritime law recognizes a claim in negligence against an **employer** for the failure to provide proper equipment.[110] However, no jurisprudence has been identified which extends this duty to non-employers. Here, as set forth in the foregoing sections of this memorandum, MMR was not Plaintiff's employer and there is no evidence in the record that it had any duty to provide Plaintiff with the equipment he needed to perform his work. For this reason alone, MMR is entitled to summary judgment in its favor on this claim. Furthermore, there is absolutely nothing in the record to indicate that this incident was caused by a failure to provide proper equipment by anyone, let alone MMR. Plaintiff alleges that he tripped and fell, not that he was injured by defective equipment he was provided or by the failure to provide him with equipment.

### vii.   No Evidence of Obligation or Failure to Provide Adequate Personnel

To the extent that Plaintiff has an independent claim for failure to provide adequate personnel under either general maritime law or Louisiana law, to the extent that same is not displaced, MMR is entitled to summary judgment in its favor on this claim as well. The record is devoid of any evidence that Plaintiff's alleged injuries were in any way caused by the failure of MMR to provide adequate personnel. Again, Plaintiff here alleges that he tripped and fell. Further, as previously set forth herein, MMR was not working on the deck where the incident occurred and was not supervising Plaintiff's work or the project on which he was working.

---

[110] *See Williams v. Sea Support Ventures LLC*, 708 F. Supp. 3d 813 (E.D. La. 2023) (Triche Milazzo, J.).

### viii.   No Evidence of Other Negligence/Unseaworthiness

Any claim by the Plaintiff against MMR for "other negligence" fails for the same reasons his more specific claims in negligence fail. Even if MMR owed Plaintiff some duty, which is denied, there is no evidence in the record of any breach or of that breach causing the Plaintiff's injuries. As there is no evidence in the record supporting these essential elements of the Plaintiff's claims, and Plaintiff cannot point to overlooked or ignored evidence on these essential elements, MMR is entitled to summary judgment dismissing any claim for "other negligence."

Further, the record is devoid of evidence, and the Plaintiff cannot possibly produce any evidence, supporting an unseaworthiness claim against MMR. "Seaworthiness applies to the vessel owner's vessel and its appurtenances."[111] The duty of seaworthiness is an absolute and non-delegable duty owed by the **owner** of the vessel to the members of the crew manning that vessel.[112] In order to articulate an unseaworthiness claim, a plaintiff must establish as an essential element that the defendant was the owner of the vessel on which the plaintiff was injured.[113] Summary judgment is appropriate when a plaintiff attempts to assert an unseaworthiness claim against a party other than the owner of the vessel on which he was allegedly injured.[114]

Here, there is no evidence in the record that MMR is the owner of the Jack/St. Malo or that the owner of the Jack/St. Malo ceded control over the Jack/St. Malo to MMR. There is no such evidence in the record because, in actual fact, MMR is not the owner of the Jack/St. Malo and has

---

[111] *Coakley v. SeaRiver Mar., Inc*., 319 F. Supp. 2d 712, 714 (E.D. La. 2004) (Feldman, J.), *aff'd*, 143 F. App'x 565 (5th Cir. 2005).
[112] *Id*.
[113] *Id*. ("Thus the plaintiff must establish that he is a seaman, a crew member, with respect to the barge on which is injury occurred while in tow, and that the defendant was the owner of the vessel.").
[114] *Id*.; *also Farnsworth v. Basin Marine, Inc.*, No. CIV.A. 97-3091, 1998 WL 259972, at *1-2 (E.D. La. May 20, 1998).

never been ceded control of the Jack/St. Malo.[115] Accordingly, Plaintiff cannot meet his burden of pointing to overlooked or ignored evidence or presenting new evidence demonstrating that MMR is the owner of the Jack/St. Malo or has been ceded control of same, and no further discovery on this issue can be of any value. As such, MMR is entitled to summary judgment on Plaintiff's unseaworthiness claim as there is no genuine issue of material fact as to this essential element of the Plaintiff's claim.

### III.    **CONCLUSION**

The record is devoid of any evidence as to essential elements of each of the claims which Plaintiff has raised against MMR in this lawsuit. What the record reflects is that MMR was working in a different part of the Jack/St. Malo and committed no safety violation, let alone a safety violation which resulted in the alleged injuries. Here, the actual facts, which are evidenced in the record, simply do not give rise to liability on the part of MMR for Plaintiff's alleged injuries. As the Plaintiff is unable to point to any ignored or overlooked evidence supporting these essential elements of his claims, MMR is entitled to summary judgment in its favor dismissing these claims with prejudice.

*[Signatures on following page]*

---

[115] **Exhibit A**, Declaration of Anthony Biesis, at ¶¶2 and 10.

Respectfully submitted,

**BIENVENU, FOCO & VIATOR, LLC**

**By:** _s/Phillip E. Foco_
      Phillip E. Foco, #25670
      Jeremy D. Carter, #39829
      4210 Bluebonnet Boulevard
      Baton Rouge, LA 70809
      Telephone: (225) 388-5600
      Facsimile: (225) 388-5622
      Email:  phillip.foco@bblawla.com
              jeremy.carter@bblawla.com

      *Counsel for MMR Group, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 7, 2025, a copy of the foregoing pleading was filed electronically with the Clerk of Court and served on all parties via the CM/ECF system.


      _s/Phillip E. Foco_
      Phillip E. Foco