BEAU HARRINGTON

```
          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF LOUISIANA

*********************************************

JOEY FOLSE

                    CIVIL ACTION NO. 2:23-CV-05737
VS.                 JUDGE JAY C. ZAINEY
                    MAG. JUDGE MICHAEL NORTH

CHEVRON U.S.A., INC.

*********************************************




          DEPOSITION OF BEAU HARRINGTON

        Taken on Tuesday, July 1, 2025
             At the LAW OFFICES of
                 LISKOW & LEWIS
         1200 Camellia Blvd., Ste 300
            Lafayette, Louisiana 70508


       REPORTED BY:  DIXIE B. VAUGHAN, CCR


***************************************************

                    JUST LEGAL

     9618 Jefferson Highway, Suite D-386

            Baton Rouge, Louisiana

     NEW ORLEANS * BATON ROUGE * LAFAYETTE
           LAKE CHARLES * HOUSTON

   (225) 291-6595              (855) 900-5878
  www.just-legal.net      setdepo@just-legal.net
```

**EXHIBIT L**

BEAU HARRINGTON

```
 1                      I N D E X
 2                                            PAGE
 3   APPEARANCES                                3
 4   AGREEMENT OF COUNSEL                       5
 5   EXAMINATION
 6        BY MR. FOCO                           6
 7        BY MR. MORSE                         13
 8        BY MR. PURSER                        16
 9   RE-EXAMINATION
10        BY MR. MORSE                         17
11   REPORTER'S CERTIFICATE                    20
12
13                  INDEX OF EXHIBITS
14              (Exhibits are attached.)
15                                            PAGE
16   EXHIBIT 1    Photograph of worksite,       10
                  previously Exhibit 3-A from
17                Joey Folse's Vol 2
                  deposition
18
     EXHIBIT 2    Schematic of Jack/St. Malo    10
19                with circle handwritten by
                  Beau Harrington and other
20                markings subsequently marked
                  by Joshua Jacques
21                       * * *
22
23
24
25
```

BEAU HARRINGTON

1  some green wire in the middle of a walkway, what
2  would you do?
3           ANSWER:  If it was a hazard, we'd pick
4  it up.
5           Question by Mr. Folse's attorney:  Would
6  green wire crossing the walkway be a hazard?
7           And you said "yes."
8           Okay?  So I want to ask you some
9  questions about that.  But I'm going to give you
10 some context before I ask those questions.  Okay?
11      A.   Okay.
12      Q.   So I'm going to show you what is
13 Exhibit 3-A to Mr. Joey Folse's deposition.  So
14 let me show you that.  Take a look at that.
15           You recognize that area to be an area on
16 the Jack/St. Malo platform?
17      A.   Yes.
18      Q.   And you understand that is the area
19 where Mr. Folse said he fell --
20      A.   Yes.
21      Q.   -- on June 29th, 2023; right?
22      A.   Yes.
23      Q.   So I'm going to tell you to assume that
24 that blue circle is the point where Mr. Folse said
25 he fell.  Okay?

1     A.    Okay.
2     Q.    Because that's what he said in his
3  deposition and he drew a circle for us and said
4  that's where he fell.  Okay?
5           And so I have a couple of questions
6  about that.
7           So first of all, do you see any green
8  wire in a walkway in that picture?
9     A.    No, I do not.  Well, I see the green
10 wire but not in the walkway.
11    Q.    Let me ask you this.  Is there a -- and
12 you mentioned -- when I asked the question would
13 green wire crossing a walkway be a hazard, you
14 said yes.
15          Does the green wire in that picture
16 present a hazard?
17    A.    No, sir.  I see a clear walkway.
18    MR. PURSER:  Objection to form.
19 BY MR. FOCO:
20    Q.    Let me ask you this.  Is the place where
21 Mr. Folse said he fell, is that a walkway at all?
22    A.    That's a pretty large open area.  And,
23 to me, there's a clear walkway right there.
24    Q.    So that circle, what does that circle
25 represent in that picture?

1    MR. GOLEMI:  Just to be clear, are you asking
2    the blue circle or the circle that's marked
3    on the platform?
4    MR. FOCO:  The circle that's marked on the
5    platform.
6    A.   So at that particular time, there was --
7 I'm really not familiar with the area or the
8 incident the day it happened because I was working
9 inside, in the control room.  But I know they were
10 setting a new module and there was a big what we
11 call a "bumper" right there.  But to the left of
12 this is a -- more of a walkway, open area.
13 BY MR. FOCO:
14    Q.   Got it.  And so is that -- that area,
15 isn't that a steel plate a little less than 1 inch
16 high that's welded to the platform top?
17    A.   Yes.
18    Q.   And so let's talk about that.  Let me
19 show you a schematic of the Jack/St. Malo.  Okay?
20       And first of all --
21    MR. FOCO:  What's the Bates on there, Mike?
22    MS. KRASKA:  790.
23    MR. GOLEMI:  What's the number?
24    THE WITNESS:  790 is the last three.
25 BY MR. FOCO:

```
 1      Q.   And so do you recognize that to be a
 2  schematic of the Jack/St. Malo?
 3      A.   Yes.
 4      MR. FOCO:  And we'll attach Mr. -- the first
 5      picture as Exhibit 1 to Mr. Harrington's depo
 6      and then we'll attach this as Exhibit 2.
 7          (Document marked as EXHIBIT 1 for
 8      identification.)
 9          (Document marked as EXHIBIT 2 for
10      identification.)
11  BY MR. FOCO:
12      Q.   Mr. Harrington, looking at that
13  schematic, can you tell us the location where
14  Mr. Folse's fall allegedly occurred?
15      A.   Yes.  Like I said, I was --
16      MR. PURSER:  Object to form.
17      A.   I was inside when the incident happened,
18  but the general area is here (indicating).
19  BY MR. FOCO:
20      Q.   Can you point to the area that's -- can
21  you show me the area that's marked on the picture
22  in Exhibit 1?
23      A.   The general areas here (indicating).
24      Q.   Why don't you mark it.  Put a little
25  circle around the general area.
```

1    A.   (Complies.)
2    Q.   And so earlier you said -- I think you
3 said this.  I don't want to put words in your
4 mouth.  I think what you said is that to the left
5 of that circle where Mr. Folse fell was an open
6 area.  Is that what you said earlier?
7    A.   Yes.
8    Q.   About how many feet would you say was
9 open area sort of to the left of where the X marks
10 the spot is on Exhibit 1 where Mr. Folse says he
11 fell?
12    MR. PURSER:  Speculative.
13    MR. GOLEMI:  Just to be clear for the --
14         since Chris isn't here, he marked a circle
15         around it so -- he said "X marks the spot."
16         The circle is what he's got marked of where
17         it is.
18 BY MR. FOCO:
19    Q.   Let me ask you a better question,
20 Mr. Harrington.  And so if we're looking at
21 Exhibit 1, which is the picture of where Mr. Folse
22 drew a circle and an "X" where he fell -- okay?
23 Right?
24    A.   Yes.
25    Q.   And in the picture, you can only see

```
 1  what looks to be a few feet to the left of that
 2  circle, the spot where he fell; right?
 3       A.   Yes.
 4       Q.   So my question to you is, how much room
 5  did he have to walk around that area --
 6       MR. PURSER:  Objection, speculative.
 7  BY MR. FOCO:
 8       Q.   -- on the platform on the day that this
 9  happened?
10       A.   I'd hate to give an estimate because I
11  don't know feet roughly, if I'm thinking of the
12  area where the picture looks familiar, but he had
13  plenty of room to walk.
14       Q.   Would you say he had 10 feet?
15       A.   Ten or more.
16       Q.   Ten or more?
17       A.   Yes.
18       Q.   Fair enough to say that?
19       A.   Yes.
20       Q.   And you can say that without
21  speculating --
22       A.   Yes.
23       Q.   -- right?
24            At the time Mr. Folse fell, there was
25  10 feet of berth around that area where he fell
```

```
 1  where he could have walked?
 2       A.   Yes, I can agree with that.
 3       Q.   No obstructions or anything in his way;
 4  right?
 5       A.   No, sir.
 6       Q.   Okay.  And so again, just to make sure
 7  before we let you go, is there anything you see in
 8  that picture that looks like a hazard to you?
 9       A.   No, sir.
10       Q.   You don't -- Mr. Harrington, you
11  don't -- you didn't have anything to do with --
12  well, you don't have any firsthand knowledge about
13  what MMR did, did not do, or had to do with this
14  accident; correct?
15       A.   No, sir.  I was in the control room at
16  the time of the incident.
17       Q.   Okay.
18       MR. FOCO:  I don't think I have any further
19            questions.
20                        EXAMINATION
21  BY MR. MORSE:
22       Q.   Mr. Harrington, my name is Harry Morse.
23  I'll be real brief.  All right?
24       A.   Yes, sir.
25       Q.   You won't be in here long today.  I
```

R E P O R T E R ' S   C E R T I F I C A T E

     I, Dixie Vaughan, Certified Court Reporter (Certificate #28009) in and for the State of Louisiana, as the officer before whom this testimony was taken, do hereby certify that on Tuesday, July 1, 2025, in the above-entitled and numbered cause, the DEPOSITION of BEAU HARRINGTON, after having been duly sworn by me upon authority of R.S. 37:2554, did testify as hereinbefore set forth in the foregoing 19 pages;

     That this testimony was reported by me in stenographic shorthand, was prepared and transcribed by me or under my personal direction and supervision, and is a true and correct transcript to the best of my ability and understanding;

     That the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board;

     That I have acted in compliance with the prohibition on contractual relationships, as defined by Louisiana Code of Civil Procedure

1  Article 1434 and in rules and advisory opinions of
2  the board;
3
4           That I am not of Counsel, nor related to
5  any person participating in this cause, and am in
6  no way interested in the outcome of this event.
7
8           SIGNED THIS THE 2ND DAY OF JULY, 2025.
9
10
11
12            DIXIE VAUGHAN, CCR
              Certified Court Reporter (LA)
13
14
15
16
17
18
19
20
21
22
23
24
25

BEAU HARRINGTON

1  Article 1434 and in rules and advisory opinions of
2  the board;
3
4         That I am not of Counsel, nor related to
5  any person participating in this cause, and am in
6  no way interested in the outcome of this event.
7
8         SIGNED THIS THE 2ND DAY OF JULY, 2025.

*Dixie B. Vaughan*

            DIXIE VAUGHAN, CCR
            Certified Court Reporter (LA)